**ALL–STATE INVESTIGATION AND SE-CURITY AGENCY, INC., a corporation of the State of Delaware, and Harleysville Mutual Insurance Company, a corporation of the State of Pennsylvania, Plaintiffs-Below, Appellants,**

v.

**TURNER CONSTRUCTION COMPANY, a corporation of the State of New York, and Liberty Mutual Insurance Company, a corporation of the State of Massachusetts, Defendants-Below, Appellees.**

Supreme Court of Delaware.

Dec. 28, 1972.

F. Alton Tybout and Richard W. Pell, of Tybout, Redfearn & Schnee, Wilmington, for appellants.

Wayne N. Elliott, of Prickett, Ward, Burt & Sanders, Wilmington, for appellees.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

WOLCOTT, Chief Justice:

This is an appeal from the entry of a summary judgment for appellee, defendant below, Turner Construction Co. ("Turn-

er") in a declaratory judgment action brought by appellant All-State Investigation and Security Agency, Inc. ("All-State").

Turner was the general contractor for an office building being constructed in Wilmington. Turner engaged All-State to provide security protection during the course of construction. The agreement between Turner and All-State contained the following exculpatory clause:

"The Subcontractor hereby assumes entire responsibility and liability for any and all damage or injury of any kind or nature whatever (including death resulting therefrom) to all persons, whether employees of the Subcontractor or otherwise, and to all property caused by, resulting from, arising out of or occurring in connection with the execution of the work; and if any claims for such damage or injury (including death resulting therefrom) be made or asserted, whether or not such claims are based upon Turner's alleged active or passive negligence or participation in the wrong or upon any alleged breach of any statutory duty or obligation on the part of Turner, the Subcontractor agrees to indemnify and save harmless Turner, its officers, agents, servants and employees from and against any and all such claims, and further from and against any and all loss, costs, expense, liability, damage or injury, including legal fees and disbursements, that Turner, its officers, agents, servants or employees may directly or indirectly sustain, suffer or incur as a result thereof and the Subcontractor agrees to and does hereby assume, on behalf of Turner, its officers, agents, servants, and employees, the defense of any action at law or in equity which may be brought against Turner, its officers, agents, servants or employees upon or by reason of such claims and to pay on behalf of Turner, its officers, agents, servants and employees, upon its demand, the amount of any judgment that may be entered against Turner, its officers, agents,

servants or employees in any such action. In the event that any such claims, loss, costs, expense, liability, damage or injury arise or are made, asserted or threatened against Turner, its officers, agents, servants or employees, Turner shall have the right to withhold from any payments due or to become due to the Subcontractor an amount sufficient in its judgment to protect and indemnify it and its officers, agents, servants and employees from and against any and all such claims, loss, cost, expense, liability, damage or injury, including legal fees and disbursements or Turner, in its discretion, may require the Subcontractor to furnish a surety bond satisfactory to Turner guaranteeing such protection, which bond shall be furnished by the Subcontractor within five (5) days after written demand has been made therefor."

While in the course of his employment, an All-State employee was injured at the construction site.

Pursuant to the aforequoted exculpatory clause, Turner demanded that All-State defend Turner in any action brought by the employee and further that All-State indemnify Turner for any judgment the employee might recover. All-State refused and brought this declaratory judgment action, asserting its nonliability under the clause. The Superior Court entered a summary judgment for Turner, from which All-State appeals. Turner settled with the injured employee; and, consequently, the only relief it is entitled to now is indemnification.

All-State argues that it is not liable under the exculpatory clause since public policy bars recovery under exculpatory clauses in contracts between contractors and subcontractors which save the contractor harmless from liability for its own negligence. We recently had occasion to consider the validity of such exculpatory clauses in State v. Interstate Amiesite Corp., Del.Supr., 297 A.2d 41 (1972). In that case we held that such clauses would

be given effect if they were "crystal clear and unequivocal in requiring the contractor to assume all liability for damage claims, whichever party may have been guilty of the negligence which actually caused the injury."

The *Amiesite* test governs the clause before us now. The instant clause, we think, is sufficiently clear and unequivocal and requires All-State to indemnify Turner. The crucial language is All-State's assumption of liability for claims "whether or not such claims are based upon Turner's alleged active or passive negligence or participation in the wrong or upon any alleged breach of any statutory duty or obligation on the part of Turner . . ."

We therefore hold that public policy does not prohibit the clause in this case from being given effect. In so doing, we note that the unequivocal language in the Turner/All-State agreement contrasts sharply with the language of the clause in *Amiesite*,* which did not expressly provide for indemnification for injuries resulting from acts of the contractor.

All-State argues that even if public policy does not prevent the clause from being given effect, 6 Del.C. § 2704 ** bars the clause. In Wenke v. Amoco Chemicals Corp., Del.Super., 290 A.2d 670 (1972), the Superior Court held that the statute applied only to planning stages and not to actual construction stages. We approved, in dictum, the *Wenke* holding in our *Amiesite*

* "The contractor shall idemnify and save harmless the Department, its officers and employees, from all suits, actions, or claims of any character brought because of any injuries or damage received or sustained by any person, persons, or property on account of the operations of the said contractor; or on account of or in consequence of any neglect in safeguarding the work; or through use of unacceptable materials in constructing the work; or because of any act or omission, neglect, or misconduct of said contractor; or because of any claims or amounts recovered from any infringements of patent, trademark, or copyright; or from any claims or amounts arising or recovered under the 'Workmen's Compensation Act,' or any other law, ordinance, order, or decree; and so much of the money due the said contractor under and by virtue of his contract as may be considered necessary by the Department for such purpose may be retained for the use of the State; or, in case no money is due, his surety may be held until such suit or suits, action or actions, claim or claims for injuries or damages as aforesaid shall have been settled and suitable evidence to that effect furnished to the Department; except that money due the contractor will not be withheld when the contractor produces satisfactory evidence that he is adequately protected by public liability and property damage insurance."

** "(a) A covenant, promise, agreement or understanding in, and in connection with or collateral to, a contract or agreement (including but not limited to a contract or

agreement with the State, any County, municipality or political subdivision of the State, or with any agency, commission, department, body or board of any of them, as well as any contract or agreement with a private party or entity) relative to the construction, alteration, repair or maintenance of a road, highway, driveway, street, bridge or entrance or walkway of any type constructed thereon, and building, structure, appurtenance or appliance, including without limiting the generality of the foregoing, the moving, demolition and excavating connected therewith, purporting to indemnify or hold harmless architects, engineers, surveyors, owners or others, or their agents, servants and employees for damages arising from liability for bodily injury or death to persons or damage to property caused by or resulting or arising from or out of the negligence of such architect, engineer, surveyor, owner or others than the promisor or indemnitor, of their agents, servants or employees, or without limiting the generality of the foregoing, caused by or resulting or arising from or out of defects in maps, plans, designs, specifications prepared, acquired or used by such architect, engineer, surveyor, owner, or others than the promisor or indemnitor, or their agents, servants or employees, is against public policy and is void and unenforceable.
"(b) Nothing in subsection (a) of this section shall be construed to void or render unenforceable policies of insurance issued by duly authorized insurance companies and insuring against losses or damages from any causes whatsoever."

Opinion. We now hold that 6 Del.C. § 2704 is inapplicable as between contractors and subcontractors involved in the actual construction process.

 Finally, All-State's insurer, Harleysville Mutual Insurance Company, issued a certificate of insurance to Turner which reflected coverage of All-State for the "Contractual Liability covering Agreement between the two Parties". Accordingly, it is estopped to deny coverage of the occurrence as set forth in the agreement between Turner and All-State. See Wilson v. American Insurance Co., Del. Supr., 209 A.2d 902 (1965).

The decision of the Court below is affirmed.

