382 A.2d 1383 (1978)
Everson CUMBERBATCH, Plaintiff,
v.
BOARD OF TRUSTEES, DELAWARE TECHNICAL & COMMUNITY COLLEGE, a Delaware State Agency, Board of Trustees, Individually, Mr. William A. Carter (Chairman), Mrs. Barbara Wilhide, Mrs. Louise Lamberti, Mr. John Miorano, Mrs. Joan Lindell, Mrs. Annabel Moore, Mr. Charles L. Simms, Ernest DiSabatino & Sons, Inc., a Delaware Corporation, Union Wholesale Company, a Delaware Corporation, Universal Floors, Inc., in the State of Delaware, Defendants.
Superior Court of Delaware, New Castle.
Submitted October 21, 1977.
Decided February 14, 1978.
Angelo Falasca, Wilmington, for plaintiff.
James T. McKinstry, Richards, Layton & Finger, Wilmington, for defendant Bd. of Trustees of Del. Technical and Community College.
Richard P. S. Hannum, Prickett, Ward, Burt & Sanders, Wilmington, for defendant Ernest DiSabatino & Sons, Inc.
Richard Galperin, Flanzer & Issacs, Wilmington, for defendant Union Wholesale Co.
Stephen B. Potter, Potter & Carmine, Wilmington, for defendant Universal Floors, Inc.
*1384 O'HARA, Judge.
The plaintiff, Everson Cumberbatch, was injured in July, 1975, when he allegedly slipped and fell in a building on the campus of the Delaware Technical and Community College ("Del Tech"). Plaintiff was attending class on the day he was injured. At that time there was construction activity taking place on the campus.
Several parties shared responsibility for the Del Tech construction project: Del Tech, the owner of the premises; Ernest DiSabatino & Sons ("DiSabatino") and C. M. Associates, Inc. ("C.M."), two companies engaged in a joint venture to provide construction management services at the Del Tech site; Union Wholesale Company ("Union") which contracted with the State of Delaware to provide material and labor for the laying of carpet for the project (the State being empowered to act for Del Tech); and, finally, Universal Floors, Inc. ("Universal") which agreed with Union to provide and install the carpeting as a subcontractor.
Plaintiff fell in a place where Universal employees were laying carpeting. Allegedly he slipped on a portion of the floor covered with glue used to secure the carpeting. Suit was brought alleging negligence on the part of Del Tech, DiSabatino, Union and Universal. C.M. has not been named as a party.
*1385 Defendants Del Tech and DiSabatino each filed cross-claims against their co-defendants, Union and Universal, seeking indemnification. Del Tech and DiSabatino have now moved for summary judgment alleging both express and implied rights to indemnification. The concepts of express and implied indemnity differ; therefore, the two theories of recovery will be considered separately.
These being motions for summary judgment, the facts herein will be considered in a light most favorable to the non-moving parties. Schagrin v. Wilmington Medical Center, Inc., Del.Super., 304 A.2d 61 (1973).

I

Express Contractual Indemnification
Both Del Tech as owner and DiSabatino as construction manager contend that they have an express contractual right to indemnification from Union under Union's contract with the State of Delaware. (Del Tech is named as owner in the contract, and DiSabatino, along with C.M., as construction manager). They claim that the indemnification provisions of the contract require Union to take over the defense of plaintiff's suit and to indemnify them for any and all losses and expenses, including attorneys' fees, resulting therefrom.
Several provisions of Union's contract are relevant. The contract, first of all, contains some general indemnification provisions which read:
"4.18 INDEMNIFICATION
4.18.1 The contractor shall indemnify and hold harmless the Owner and the Architect and Construction Manager and their agents and employees from and against all claims, damages, losses and expenses including attorneys' fees arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss or expense (1) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, and (2) is caused in whole or in part by any negligent act or omission of the Contractor, any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder."
4.18.3 The obligations of the Contractor under this Paragraph 4.18 shall not extend to the liability of the Architect, and Construction Manager, his agents or employees arising out of (1) the preparation or approval of maps, drawings, opinions, reports, surveys, Change Orders, designs or specifications, or (2) the giving of or failure to give directions or instructions by the Architect and Construction Manager, his agents or employees provided such giving or failure to give is the primary cause of the injury or damage."
The contract contains provisions relating to safety. These provisions state, in pertinent part:
"ARTICLE 10

PROTECTION OF PERSONS AND PROPERTY
10.1 Safety Precautions and Programs
10.1.1 The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the Work.
10.2 Safety of Persons and Property
10.2.1 The Contractor shall take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damage, injury or loss to:
.1 all employees on the Work and all other persons who may be affected thereby; ...
10.2.2 The Contractor shall comply with all applicable laws, ordinances, rules, regulations and lawful orders of any public authority having jurisdiction for the safety of persons or property or to protect them from damage, injury or loss. He *1386 shall erect and maintain, as required by existing conditions and progress of the Work, all reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent utilities."
Finally, the contract contains a paragraph defining the responsibility of the construction manager, DiSabatino, with regard to safety:
"7. Construction Manager's Review of Safety Program:
a. The Construction Manager will review the safety program as developed by each Contractor. (The performance of such services by the Construction Manager shall not relieve the Contractor of his responsibilities for the safety of persons and property, and compliance with statutes, rules, regulations and orders applicable to the conduct of the work)."
On the basis of the above contractual provisions Union argues that it is not obligated to indemnify either Del Tech or DiSabatino. The general indemnification clause of Union's contract permits indemnification if the indemnitees (Del Tech and DiSabatino) are not negligent or if their negligence is only concurrent or partial. Union argues that a party can be indemnified only when he seeks to insulate himself from his own total negligence. In support of that position Union relies upon Warburton v. Phoenix Steel Corp., Del.Super., 321 A.2d 345 (1974) aff'd sub nom. Noble J. Dick, Inc. v. Warburton, Del.Supr., 334 A.2d 225 (1975) and State v. Interstate Amiesite Corporation, Del.Supr., 297 A.2d 41 (1972).
The Court does not find Union's interpretation of the case law persuasive. It is true that contracts to indemnify a party against the consequences of his own negligence are not favored in law, Powell v. Interstate Vendaway, Inc., Del.Super., 300 A.2d 241 (1972), and that to be enforceable, the intent to indemnify must be clear and unequivocal. State v. Interstate Amiesite Corporation, supra. However, to hold that a party can be indemnified where he is solely or totally at fault, but not where he is only partially at fault would be illogical. If such were the case, a party who is more culpable could be relieved of the consequences of his own negligence, whereas a party who is willing to accept liability for his own total negligence, and seeks relief only where his negligence concurred with that of another party, would receive no indemnification.
A number of cases have upheld the validity of indemnification clauses providing for relief from partial or concurrent negligence. Jamison v. Ellwood Consolidated Water Company, 3rd Cir., 420 F.2d 187 (1970); Binswanger Glass Co. v. Beers Const. Co., 141 Ga.App. 715, 234 S.E.2d 363 (1977); Nogacz v. Procter & Gamble Manufacturing Co., 37 Ill.App. 636, 347 N.E.2d 112 (1975); Babcock & Wilcox Co. v. Fischbach and Moore, Inc., 218 Pa.Super. 324, 280 A.2d 582 (1971). In the Binswanger Glass Co. case an indemnification provision, nearly identical to the one in issue here, was found to be legally binding.
Further support for the validity of the indemnification clause appears in All-State Inv. & Sec. Agcy., Inc. v. Turner Const. Co., Del.Supr., 301 A.2d 273 (1972). There the Supreme Court upheld an indemnification provision under which the subcontractor, All-State, agreed to indemnify the contractor, Turner, against any claims, "whether or not such claims are based upon Turner's alleged active or passive negligence or participating in the wrong ..." The quoted language would appear to permit indemnification where Turner was only partially negligent.
In the light of the above, the Court concludes that a party is permitted to indemnify himself for his partial negligence, as well as his total negligence, the only restriction being that the intent to do so must be clear *1387 and unequivocal. The Court further concludes that the clause in Union's contract is sufficiently clear to require Union to indemnify Del Tech and DiSabatino.
A holding that the provision in question is clear does not settle the indemnification issue entirely. Contracts must be read as a whole. Hudson v. D & V Mason Contractors, Inc., Del.Super., 252 A.2d 166 (1969). Individual clauses cannot be singled out and interpreted in a vacuum.
It is the function of the Court to construe the terms of Union's contract once the terms have been established. Reardon v. Exchange Furniture Store, Del.Supr., 188 A. 704 (1936). Read together, the provisions of the contract quoted above place primary responsibility for safety upon the individual contractors. However, the contract also required DiSabatino to review the safety programs established by contractors such as Union. It can be logically inferred that as part of its review, DiSabatino was under an affirmative duty to inform contractors of any deficiencies in their safety programs. To hold otherwise would render any review of the programs meaningless.
The duty of DiSabatino to check precautions has an important bearing on this case. The record indicates that there may not have been any warning signs or barricades in the area where the plaintiff fell. That fact would imply possible negligence on the part of Union. However, the deposition of DiSabatino's own construction superintendent reveals that it was the practice on the jobsite not to post signs or erect barricades if workers were the only persons on the premises. Such precautions would be taken only if contractors were aware that nonworkers, such as plaintiff, would be on campus. Thus, if Union was not informed that students were being allowed on campus its failure to take added safety measures might not indicate negligence.
Testimony before the Court indicates that Del Tech and DiSabatino were aware that students would be using the college buildings while work was still in progress. Union, however, had no means of ascertaining that fact unless told by Del Tech or DiSabatino, or unless Union employees noticed students in the vicinity of the work.
Apparently representatives of Del Tech and DiSabatino informed the contractors about the student safety problem at site meetings attended by the contractors. However, when questioned on deposition, DiSabatino's construction superintendent could not recall seeing any representatives of Union or Universal at the meetings. Minutes of the site meetings were allegedly mailed to all contractors. However, it has not been sufficiently established that the minutes were sent to or received by Union, nor have the contents of the minutes been established. A genuine issue of material fact exists, therefore, as to whether Union was informed about the student problem.
Del Tech and DiSabatino are entitled to indemnification under Union's contract only if the plaintiff's injury was caused in whole or in part by Union. From the foregoing facts, however, it is clear that negligence on the part of Union has not been established. Therefore, the duty to indemnify has not yet arisen.
The respective rights of Del Tech and DiSabatino to indemnification require some further clarification. Del Tech, as owner, will be entitled to indemnification if it is shown that Union was aware of the potential danger posed by the presence of students on campus. In addition, Del Tech would be entitled to indemnification if it is shown that Union breached a duty by its failure to attend the site meetings. Had Union attended the meetings, it would have been informed of the possible hazard to students.
DiSabatino's responsibility under the contract differs from Del Tech's. DiSabatino will also be entitled to indemnification if it is shown that Union was aware of the presence of students. However, Union's failure *1388 to attend the site meetings may not entitle DiSabatino to indemnification. Paragraph 4.18.3 of Union's contract, quoted above, provides that the construction manager (DiSabatino) will not be relieved of liability where its failure to give instructions is the primary cause of injury. The clause in question does not specify the kind of instructions which are required. Nevertheless, the clause can reasonably be construed to include instructions to contractors with regard to safety matters.
Under the facts presently before the Court it is possible that DiSabatino failed to instruct Union regarding the presence of students on campus. A jury might find that DiSabatino's failure to give notice to Union was the primary cause of plaintiff's injury. Therefore, DiSabatino might not be entitled to indemnity given the language of paragraph 4.18.3.
One further matter should be touched upon. In its contract Union agreed to indemnify Del Tech and DiSabatino for the whole or partial negligence of its subcontractors. Thus, if negligence on the part of Universal can be established, Union would be required to indemnify Del Tech and DiSabatino even though Union, itself, was not negligent.

II

Implied Indemnification
DiSabatino has alleged that Union and Universal have breached an implied contract to perform their duties in a workmanlike manner. Consequently, their breach of this duty has created an implied promise of indemnity running toward DiSabatino from Union and Universal. Del Tech has adopted the same argument.
It is clear that there can be no action for implied indemnification against Union. Union's obligation to indemnify Del Tech and DiSabatino is set forth in the terms of a written contract. In Howard, Needles, Tammen & B. v. Steers, Perini & P., Del. Supr., 312 A.2d 621 (1973) it was held that:
"[W]hen the parties to a contract have entered into a written agreement, expressly setting forth one party's indemnity liability, there is no room for any enlargement of that obligation by implication."
The issue of Universal's implied obligation to indemnify must still be dealt with. Universal did not contract directly with either Del Tech or DiSabatino. Moreover, Article 5 of Union's contract provided in part:
"5.1.3. Nothing contained in the Contract Documents shall create any contractual relation between the Owner, Construction Manager, or the Architect and any Subcontractor or Sub-subcontractor."
The only written agreement entered into by Universal was with Union.
An implied right to indemnification has been recognized in Delaware. Diamond State Tel. Co. v. University of Delaware, Del.Supr., 269 A.2d 52 (1970). In the Diamond State case the Supreme Court affirmed the Superior Court decision in Ianire v. University of Delaware, Del.Super., 255 A.2d 687 (1969), which refused to dismiss a third party complaint seeking indemnification brought by the University of Delaware against Diamond State Telephone Company. In the Ianire case an employee of the Telephone Company had been electrocuted while installing a T.V. cable on University property. His estate and widow brought a negligence action against the University. The Court held that if a contract could be found to exist between the University and Diamond, there could also be found an implied promise on the part of Diamond to perform its duties in a workmanlike manner. If Diamond breached that duty, it could be held liable to indemnify the University for any damages recovered by the plaintiffs from the University.
The Diamond State case differs from the present case because there the injured party was an employee of the third party defendant. Here the injured party has no *1389 employment relationship with any of the defendants. The distinction, however, does not preclude indemnification. A number of cases have recognized a right to implied indemnity where the injured party is not an employee. Cahill Brothers, Inc. v. Clementina Company, 208 Cal.App. 367, 25 Cal. Rptr. 301 (1962); Kaplan v. Merberg Wrecking Corporation, 152 Conn. 405, 207 A.2d 732 (1965); Daly v. Bergstedt, 267 Minn. 244, 126 N.W.2d 242 (1964); Colon v. Board of Education of City of New York, 14 A.D.2d 842, 220 N.Y.S.2d 875, 184 N.E.2d 294 (1962) (Minnesota and New York have since adopted a doctrine which permits contribution based on the relative fault of the parties. Tolbert v. Gerber Industries, Inc., Minn.Supr., 255 N.W.2d 362 (1977); Dole v. Dow Chemical Company, 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972)). The obligation to perform one's duties in a workmanlike manner extends to persons other than fellow workers.
In Ianire v. University of Delaware, supra, this Court recognized that there are several legal theories of implied indemnification. In addition to an implied contractual promise, an equitable obligation to indemnify can arise. See Restatement of Restitution § 95. Further, indemnification is possible under an active versus passive theory of negligence established at common law.
When the Supreme Court decided the appeal in that case, it held that the University could not be granted indemnification under equitable principles of restitution or under a scheme of active versus passive negligence. Diamond State Tel. Co. v. University of Delaware, supra. However, those theories were rejected only because the plaintiff had been compensated by Diamond State Telephone Company under the applicable Workman's Compensation law. The exclusive nature of the Workmen's Compensation remedy was held to preclude indemnification under the latter two theories.
Since the plaintiff in this case is not an employee of any of the defendants, the distinction does not apply here. Indemnification can properly be had under any of the above theories.
Upon application of each theory to the facts at hand, it is clear that Del Tech and DiSabatino have failed to establish any right to implied indemnification. Even assuming the existence of a contractual relationship between the parties it cannot be said that Universal breached a duty to perform in a workmanlike manner. As was stated above, it was practice on the jobsite that signs and barricades would not be put up unless it was known that non-workers would be in the vicinity of the construction. As was the case with Union, Del Tech and DiSabatino have failed to establish that Universal had knowledge of the presence of students on campus.
For the same reason Universal cannot be said to have negligently failed to make safe a dangerous condition under Restatement of Restitution § 95. It has not been shown that Universal knew, or in the exercise of reasonable care should have known, of the danger posed to the students.
Furthermore, it cannot be said that Universal was actively negligent. Negligence on the part of Universal has not been established. Nor is it certain that the construction manager, DiSabatino, was only passively negligent. If DiSabatino failed to give proper instructions as to the possibility of students walking in work areas, that omission could be considered active negligence.
Since negligence on the part of Union and Universal has not been sufficiently established, and genuine issues of material fact still exist, the motions of Del Tech and DiSabatino for summary judgment on the issue of indemnification must be denied at this juncture of the case.
IT IS SO ORDERED.